UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODERICK HOWARD                                    CIVIL ACTION

VERSUS                                             NO. 18-4612

SEASPAN CORP., ET AL.                              SECTION A(4)

## ORDER AND REASONS

The following motion is before the Court: **Motion for Summary Judgment (Rec. Doc. 62)** filed by defendant, Seaspan Corp. Plaintiff, Roderick Howard, opposes the motion. The motion, submitted for consideration on April 28, 2021, is before the Court on the briefs without oral argument.

Plaintiff, Roderick Howard, was a longshoreman employed by Ports America on May 7, 2017, when he boarded the M/V SEASPAN FELIXSTOWE at the Nashville Avenue wharf. Plaintiff injured his neck, back, and knee when he was struck in the head by a manhole cover and then fell from an access ladder to the deck below. Plaintiff claims that issue with the manhole cover, in particular with a hinge or a bolt securing the hinge, caused his injuries. Plaintiff contends that the vessel owner violated the *Scindia* duties and is liable for his injuries.[1]

On April 4, 2019, the Court granted summary judgment in favor of Defendant on Plaintiff's *Scindia* claims grounded on the active control duty and the duty to intervene. Defendant had argued that Plaintiff lacked sufficient evidence to prove a violation of any

---

[1] *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981). Under *Scindia*, a vessel owner owes only three duties to a longshoreman like Plaintiff: the turnover duty, the active control duty, and the duty to intervene. *Landry v. G.C. Constr.*, 514 Fed. Appx. 432 (5th Cir. 2013) (unpublished).

of the *Scindia* duties but the Court denied summary judgment as to the *Scindia* turnover duty. (Rec. Doc. 32, Order and Reasons). The parties then participated in a settlement conference with the magistrate judge but no resolution was reached. (Rec. Doc. 34, Minute Entry). The case was scheduled to be tried to the bench on May 20, 2019, as to the turnover duty claim. (Rec. Doc. 21).

Plaintiff filed a motion to continue trial shortly before the pretrial conference was scheduled to take place. (Rec. Doc. 38, Motion to Continue). The basis of that motion was that as a longshoreman Plaintiff was pursuing administrative remedies with the USDOL, and that this litigation would perhaps be streamlined if that administrative process were to conclude first. Defendant did not consent to the requested trial continuance but the objection was moot given that a criminal matter was scheduled for trial on the same date as this case. (Rec. Doc. 40, Minute Entry). The Court ultimately stayed and closed the case pending a final decision from Plaintiff's benefits hearing before the USDOL, that hearing having been delayed throughout 2020 due to the COVID-19 pandemic. (Rec. Doc. 50, Order). The Court reopened the case on December 10, 2020, after learning that Plaintiff had settled his LHWCA claim with the carrier. (Rec. Doc. 58, Minute Entry).

At the time that the case was reopened the parties advised that they remained optimistic about the possibility of settlement although they later reported that their optimism had waned. (Rec. Doc. 59, Minute Entry). The parties' optimism regarding the possibility of settlement reached its nadir when Defendant advised the Court that it would move for summary judgment regarding the *Scindia* turnover duty if the case did not settle. (Rec. Doc. 59, Minute Entry). The parties attended yet another settlement

conference with the magistrate judge but they were not able to reach an amicable resolution. (Rec. Doc. 61, Minute Entry). The instant motion for summary judgment soon followed. No trial date is set but the Court advised the parties that it would schedule a status conference for the purpose of selecting a trial date if the case did not settle and if the Court denied summary judgment as to the turnover duty claim. (Rec. Doc. 59, Minute Entry).

The turnover duty applies to the vessel owner's obligation before or at the commencement of the stevedores' activities. *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 392 (5th Cir. 2008). Under the turnover duty a vessel owner has two responsibilities: (1) a duty to exercise ordinary care under the circumstances to turn over the vessel and its equipment in such a condition that an expert stevedore can carry on stevedoring operations with reasonable safety; and (2) a duty to warn the stevedore of latent or hidden dangers which are known or should have been known to the vessel owner. *Dow v. Oldendorff Carriers GMBH & Co.*, 387 F. App'x 504, 506 (5th Cir. 2010) (not published) (citing *Kirksey*, 535 F.3d 388, 392 (5th Cir. 2008)).

Defendant's position in support of summary judgment can be stated succinctly as follows: Since the Court's ruling in 2019 (when judgment as a matter of law was denied as to the turnover duty), the parties have had the opportunity to depose the vessel's chief officer at the time of the incident, Mr. Adul Kashem Siddiquee; Mr. Siddiquee's testimony, when considered in conjunction with the vessel's records, provides uncontroverted evidence that Defendant complied with the turnover duty; and given the absence of evidence to support Plaintiff's claim that the duty was breached, there is no

triable issue for trial, and the Court should grant judgment as a matter of law in favor of Defendant.

As Defendant points out, this case is not being tried to a jury. The Court will sit as the finder of fact on all claims, and therefore will be tasked with resolving any factual disputes. In bench trial cases the district judge has greater discretion to grant summary judgment. *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019). The district judge may "decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result." *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)).

It is clear to the Court that very few material facts in this matter are actually in dispute insofar as liability is concerned. While engaging in stevedoring operations aboard Defendant's vessel, Plaintiff fell from the top of an access ladder to the deck below. Plaintiff fell because when he grabbed onto the manhole cover at the top of the ladder, that cover being latched in an upright and open position when Plaintiff encountered it, the cover detached at its left hinge. The cover detached at its left hinge because the hinge bolt that should have secured the cover to the lugs on the deck was not in place, and neither was the cotter pin that would have prevented the hinge bolt from sliding out of the lugs. No witness thus far has been able to enlighten the parties as to whether the bolt had been in place without the cotter pin when Plaintiff grabbed the cover, whether the hinge bolt and the cotter pin were both missing when Plaintiff grabbed the cover, or as to why either or both of those parts were not in place and properly fastened when Plaintiff climbed the access ladder and grabbed the cover.[2]

---

[2] Plaintiff explained at his deposition that using a manhole cover such as the one at issue in this case is typically how stevedores and crew exit an access ladder, and that the

But Plaintiff now concurs with Defendant's expert's opinion that even absent the cotter pin the hinge bolt would not have come free from the lugs on its own (in all candor, the Court finds this assertion difficult to believe because the purpose of the cotter pin is to keep the hinge bolt from coming out of the lugs), and that the only reasonable explanation for the detached hinge is that someone purposely removed the hinge pin and cotter pin before Plaintiff attempted to climb the ladder. So the issue of why the hinge failed no longer requires determination at trial because the parties agree on the issue. But unfortunately no witness or vessel record thus far has been able to enlighten the parties as to who the guilty party might be; thus there is no direct evidence in this case to identify who removed the hinge bolt and the cotter pin or why and when it was done.

Plaintiff posits that the only reasonable explanation is that it was a member of the vessel's crew who pulled out the hardware, likely as part of a repair effort, before Plaintiff got there, leaving the hinge assembly without sufficient stabilizing support. If Plaintiff could prove this then it would be nearly impossible not to conclude that

---

horizontal bars on the cover are intended for that purpose. Thus far there has been no indication of contributory fault but that issue is not before the Court at this time.

Photographs of the detached hinge that were taken shortly after the incident by other personnel onboard clearly depict the detached hinge with the hinge bolt and cotter pin missing. After the incident occurred, the vessel's Chief Officer found the missing hinge bolt on the deck below and reassembled the hinge with a cotter pin from the vessel's storeroom. Nonetheless it has not escaped the Court's notice that Defendant's memorandum in support is steeped in aspersions against Plaintiff's credibility and his theory of the case, which Defendant contends has changed many times.

The Court does not find it remarkable that Plaintiff, who left the scene to go to the hospital after the incident, and who had no relationship or subsequent access to the vessel, did not know why the hinge failed, whether due to corrosion, or breakage, or someone having intentionally removed the hinge bolt and/or cotter pin. There is little doubt that the incident occurred exactly as Plaintiff describes it in his deposition, and if there is a legitimate reason to question Plaintiff's credibility as to the incident, it is not apparent from the current record. If the Court were inclined to disbelieve Plaintiff for some reason, the Court would not make such a credibility determination on summary judgment, even in a nonjury case.

Defendant breached the turnover duty. From what the Court has seen so far the detached hinge, while surely hazardous, was not open and obvious to the stevedores who came aboard the vessel or something that those same stevedores should have anticipated encountering.

Without direct evidence Plaintiff relies on circumstantial evidence to remove his theory of the case from the realm of mere speculation, and his circumstantial evidence derives in large part from temporal proximity as follows: the vessel's logs, as interpreted by the Chief Officer, confirm that the stevedores boarded the vessel at 5:50 p.m. on the day of the incident, and that stevedoring operations commenced at 6:00 p.m. (Rec. Doc. 62-3 at 14). Plaintiff's incident happened at 6:10 p.m., which is only 20 minutes after the stevedores came aboard. Thus, Plaintiff argues that given the exceedingly short period of time that the stevedores had been aboard the FELIXSTOWE when he climbed the access ladder, it is highly unlikely that one of his fellow stevedores removed the bolt, leaving the most likely conclusion to be that one of the vessel's crew did it. As Plaintiff points out, the manhole cover was in the open and latched position when Plaintiff encountered it so whoever positioned it that way had to have noticed the problematic hinge, and it was more likely than not a crew member that would have opened and latched the manhole cover. Plaintiff's theory of the case is certainly plausible.

Of course, the Chief Officer has testified that he performed a thorough inspection of the vessel prior to the stevedores coming aboard, and that his thorough inspection included the very access ladder and manhole cover from which Plaintiff fell, yet he discovered no anomalies whatsoever during his pre-stevedoring inspection. From

Defendant's perspective, this is probative circumstantial evidence that it was not a member of the vessel's crew that removed the hardware.

Defendant's motion for summary judgment is grounded on the contention that the Chief Officer's testimony regarding the pre-stevedoring inspection is uncontroverted, and that Plaintiff has no evidence to prove *who* removed hinge bolt/cotter pin and *when* that occurred. Therefore, according to Defendant, Plaintiff cannot prove the essential elements of his claim and he cannot meet his burden of proof at trial.

First, the Court is not particularly moved by the fact that the Chief Officer's testimony is uncontroverted because the Court cannot imagine who would be in a position to contradict him. Plaintiff and the other stevedores were not on the vessel when the Chief Officer did his inspection, and apparently he conducted the inspection alone. Defendant repeatedly points out that Plaintiff's accident was unwitnessed but so was Chief Siddiquee's inspection. So again, it is not surprising that his testimony about the inspection is uncontroverted. The Court may or may not credit it, especially insofar as it pertains to the access ladder and manhole cover at issue.

Second, while not characterizing it as such, the real deficiency in Plaintiff's proof that Defendant's motion is grounded upon is the absence of any direct evidence to prove *who* removed hinge bolt/cotter pin and *when* that occurred. But the Court is not persuaded that circumstantial evidence is insufficient as a matter of law for Plaintiff to meet his burden of establishing by a preponderance of the evidence that Defendant breached the turnover duty. The question is not whether there is reasonable doubt as to whether someone other than one of the stevedores that boarded the vessel at 5:50 p.m. on the day of the incident removed hinge bolt and cotter pin, but rather whether the

circumstantial evidence establishes that it was more likely than not (preponderance of the evidence) that it was a member of the vessel's crew that removed the hardware and created the hazard, or whether the Chief Officer did not exercise ordinary care when he performed his inspection. Given that Plaintiff's incident occurred as he was climbing a ladder to seek out the vessel's gearbox on an upper deck, not in the cargo hold where one would expect numerous other stevedores to be moving about in the first 20 minutes after coming aboard the vessel, the Court finds it difficult to believe that another one of the stevedores pulled out the hinge bolt. And the temporal proximity of the stevedores' arrival and Plaintiff's accident makes the Court less inclined to believe that one of the stevedores removed the hardware. The Chief Officer was adamant that no member of his crew would have had a reason to do so but the Court would assume that a stevedore would have had even less reason to do it.

This much is clear—the hinge bolt and the cotter pin were in fact missing when Plaintiff climbed the ladder, and the manhole cover had already been latched in an upright position when Plaintiff encountered it. So the possible scenarios are as follows: Plaintiff is lying; Plaintiff removed the bolt himself to cause his own accident; a member of the vessel crew removed the hinge bolt after the chief inspected the vessel and that's why he didn't notice the hinge hazard; a member of the vessel crew removed the hinge bolt before the chief inspected and he didn't notice the hinge hazard thereby calling into question whether he exercised ordinary care when he conducted his inspection; one of Plaintiff's crew got there before plaintiff and in the first 20 minutes of stevedoring operations removed the bolt for reasons that no one can explain; someone from the last group of stevedores in Houston, Texas removed the hinge bolt and latched the cover in

the open position, and the chief missed the hinge hazard calling into question whether he exercised ordinary care when he conducted his inspection; or someone from the last group of stevedores in Houston, Texas removed the hinge bolt and latched the cover in the open position and the chief missed the hinge hazard when he inspected, not because he failed to exercise ordinary care when he conducted his inspection but rather because the latent hazard was not of such a nature that the chief would have noticed it while exercising ordinary care in conducting his inspection. Perhaps there are other possible scenarios. At this time the Court is not inclined to rule out any of them.

The Court is persuaded that Defendant is not entitled to judgment as a matter of law on the current record. Of course, that is not the same as saying that Plaintiff is entitled to judgment as a matter of law on the current record either.[3]

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 62)** filed by defendant, Seaspan Corp. is **DENIED.**

**IT IS FURTHER ORDERED** that a status conference with the Court is set for **Thursday, May 27, 2021, at 10:45 a.m.** BY TELEPHONE. The call in number is 877-336-1280; access code 2321992.

May 24, 2021

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff purported to cross move for summary judgment in his opposition memorandum but this was not procedurally proper because a memorandum in opposition is not a motion.